IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-02712-REB-KMT

LEROY DAMASIO FRESQUEZ,

      Plaintiff,

v.

SHERIFF TED MINKS,
MICHAEL FISH, Detention Service Manager,
JOHN DOE (CAPTAIN), March 5, 2010,
LT. MARTINALLI,
LT. G. GITTIN,
LT. J. LUCAS,
ADMINISTRATIVE SGT. RENFRO,
SGT. TROY BETKA,
SGT. SCOTT HAPP,
SGT. STEVEN WYGANT,
OFFICER KATHRINE FEROE,
DEPUTY SHERIFF CRUMBAKER,
DEPUTY SHERIFF RYAN VIERS,
DEPUTY SHERIFF DUSTIN DYELING,
DEPUTY SHERIFF ANTHONY KOTRIS,
DEPUTY SHERIFF DONALD SPRINGFIELD,
DEPUTY SHERIFF HOLLEY,
DEPUTY SHERIFF JAMES GELEUDE,
DEPUTY SHERIFF JASON RICHARDSON,
DEPUTY SHERIFF REID PERRY,
DEPUTY SHERIFF WILLIAM BOHM,
DEPUTY SHERIFF ERIK BOUGHAM,
DEPUTY SHERIFF HERBERT LONGSHORE,
DEPUTY SHERIFF #1958 (Name Unknown),
COUNSELOR MIKE COLLINS,
COUNSELOR SUPERVISOR DEBRA ELUDO,
CORRECTIONAL HEALTHCARE MANAGEMENT,
CLAUDIA VAN BUREN/HSA,
RAYMOND HERR, Responsible Physician,
TRACY HAINES, LPN, and
KATHERINE BECERRA, RN,

Defendants.

## ORDER AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

This matter comes before the court on several interrelated motions: (1) "Jefferson County Sheriff Defendants' Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6)" (Doc. No. 54, filed May 10, 2012 ["Sheriff Defs. Mot."]), filed by Defendants Sheriff Ted Mink, Detention Service Manager Michael Fish, Lieutenant Marinelli, Lieutenant Lucas, Captain Gittins, Sergeant Renfro, Sergeant Betka, Sergeant Happ, Sergeant Wygant, Deputy Feroe, Deputy Crumbaker, Deputy Viers, Deputy Dye, Deputy Kotris, Deputy Springfield, Deputy Holley, Deputy Geleude, Deputy Richardson, Deputy Perry, Deputy Bohm, Deputy Baughman, Deputy Longshore, Counselor Collins, and Counselor Supervisor Aludo (collectively "Sheriff Defendants"); (2) "CHM Defendants' Combined Motion and Brief to Dismiss Second Amended Prisoner's Complaint" (Doc. No. 80, filed June 15, 2012 ["CHM Defs. Mot."]), filed by Defendants Correctional Healthcare Management, Inc. ("CHM"), Claudia Van Buren, Raymond Herr, Tracy Haynes, and Katherine Becerra (collectively "CHM Defendants");[1] (3) Plaintiff's "Motion for Leave to Amend – Second Amended Prisoners [sic] Complaint" (Doc. No 85, filed June 21, 2012 ["Pltfs. Mot. Am."]); and (4) "Plaintiff's Motion to Strike [doc #80], [doc #96]

---

[1]A number of the defendants' names were misspelled in Plaintiff's papers.  The court uses the correct names herein.

and Jefferson County Sheriff Defendants (sic) [Reply in Support of their Motion to Dismiss], as

Untimely" (Doc. No. 105, filed Aug. 6, 2012 ["Mot. Strike"])

## FACTUAL BACKGROUND

The following facts are derived from Plaintiff's Second Amended Complaint (Doc. No.

17 ["SAC"]).  Plaintiff generally alleges that while incarcerated at the Jefferson County

Detention Facility ("JCDF"), medical and prison staff failed to protect him from, and treat him in

response to, an altercation he had with a deputy sheriff at JCDF on March 5, 2010.  (*Id*. at 7.)

Plaintiff alleges that Defendant Viers, a deputy sheriff, "without need or provocation grab[bed]

Plaintiff while drinking coffee and slam[med him] face first into the ground," causing various

injuries to Plaintiff's teeth, mouth and back.  (*Id*. at 18.)  Plaintiff also alleges prison staff

interfered with personal materials connected to his pending court cases, and restricted his access

to the law library at the JCDF.  (*Id*.)  In his SAC, Plaintiff asserts three claims pursuant to 42

U.S.C. § 1983.  (*Id*. at 7-18.)

In Claim One, Plaintiff alleges that between December 23, 2009 and February 24, 2010,

Defendants Sgt. Renfro and Debra Aludo (incorrectly spelled Eludo) were informed or alerted by

other means that unnamed deputy sheriffs were threatening Plaintiff and that "his well being was

in jeopardy." (*Id*. at 8-9.)  Plaintiff alleges neither of the named Defendants took any action, and

on March 5, 2010, Defendant Ryan Viers assaulted him.  On the same day following the incident

with Defendant Viers, Plaintiff alleges he came in contact with Defendants Dye (incorrectly

spelled Dyeling), Viers, Kotris, Springfield, Geleude, Richardson, Perry, Baughman (incorrectly

spelled Bougham), Longshore, Bohm, Wygant, and Lucas, and asked each for medical help and

attention but received no redress.  (*Id*. at 10-13.)  Still on March 5, 2010, Plaintiff admits he was

seen by Defendant Katherine Becerra, a nurse, and medically treated and evaluated.  (*Id*. at 13.)

Plaintiff alleges, however, that Defendant Becerra did not refer him to a dentist for further

treatment.  (*Id*.)

On March 7, 2010, two days later, and again on March 11, 2010, Plaintiff alleges he sent

a medical request form to Defendant CHM asserting a need for medical treatment and that

Defendants Claudia Van Buren, a nurse, and Raymond Herr, a physician, received the requests

but "intentionally disregards to ensure Plaintiff recieved [sic] treatment."  (*Id*. at 14.)

Notwithstanding, Plaintiff was treated by another nurse, Defendant Tracy Haines, on March 11,

2010.  (*Id*. at 15.)

Plaintiff alleges between March 10 and March 24, 2010, Defendants Mike Collins, Debra

Aludo, Sgt. Renfro, Michael Fish, and Katherine Feroe were informed or alerted by other means

that Plaintiff needed medical attention but that each Defendant disregarded that need.  Plaintiff

alleges CHM failed to "supervise its subordinates and train medical staff to treat or refer to an

appropriate provider" (*id*. at 14) and that Sheriff Ted Minks did not "make sure his subordinates

benieth [sic] his supervision are trained to not violate laws . . ." (*Id*. at 16).

In Claim Two, Plaintiff alleges that during January and February 2010, he "attempt[ed] to

send out [legal mail] thats [sic] been getting delayed and abridged by personnel" at JCDF.  (*Id*. at

17.)  Plaintiff further alleges that when he attempted to inform jail supervisors about this, along

with concerns of "abridgement of access to . . . law library and materials," Defendant Crumbaker

threatened him with physical harm.  (*Id*.)  Plaintiff alleges Defendant Happ and Defendant

4

Renfro, through their positions as supervisors, became aware of the issues with Plaintiff's legal material, yet took no action to intervene.  (*Id.*)  Additionally, Plaintiff alleges Defendant Holley "tampered" in an unspecified manner with documents Plaintiff intended to use in his case, and when Defendant Betka became aware of such conduct, he took no action to stop it.  (*Id.*)  Lastly, Plaintiff alleges Defendant Gittins did not allow Plaintiff to make photocopies of materials he wished to use as exhibits for his cases.  (*Id.*)

In Claim Three, Plaintiff alleges that on March 5, 2010, Defendant Viers engaged in specified criminal activity during an altercation with Plaintiff, resulting in injuries to Plaintiff's teeth, mouth and back.  (*Id.* at 18.)  Plaintiff further alleges Deputy Sheriff Baughman witnessed the incident, but did not report Defendant Viers' activity and that Defendant Sheriff Minks failed to "ensure Plaintiff['s] health and safety under his supervision."  (*Id.*)

As a combined result of the defendants' conduct, Plaintiff alleges he has suffered injuries to his teeth, mouth and back, as well as mental distress and humiliation.  (*See id.* at 8-18.) Plaintiff seeks compensatory, punitive and nominal damages, as well as prospective injunctive relief in the form of medical care and changes to conditions at the Jefferson County Detention Facility.  (*Id.* at 20-21.)

## PROCEDURAL BACKGROUND

Plaintiff, proceeding *pro se*, filed his Prisoner Complaint on October 18, 2011.  (Doc. No. 1.)  On December 12, 2011, Plaintiff filed an Amended Prisoner Complaint.  (Doc. No. 9.)  On February 1, 2012, Plaintiff filed his SAC and now seeks leave to file a Third Amended Complaint.

The Sheriff Defendants filed their Motion to Dismiss on May 10, 2012.  (Sheriff Defs. Mot.).  Plaintiff filed a response on June 21, 2012 (Doc. No. 83 ["Resp. Sheriff Defs. Mot."]), and the Sheriff Defendants filed a Reply on July 26, 2012 (Doc. No. 98 [Reply Sheriff Defs Mot.)  The CHM Defendants filed their Motion to Dismiss on June 15, 2012.  (CHM Defs. Mot.)  Plaintiff file a response on July 11, 2012 (Doc. No. 95 ["Resp. CHM Defs. Mot."], and the CHM Defendants filed a reply on July 25, 2012.  (Doc. No. 97 ["Reply CHM Defs. Mot.")  Plaintiff's unauthorized surreplies to both Motions (Doc. Nos. 102, 108) were stricken by the court (*See* Minute Orders, Doc. Nos. 103, 111, entered Aug. 3, 2012 & Aug. 14, 2012).

On June 21, 2012, before briefing on the Motions to Dismiss was complete, Plaintiff filed his Motion to Amend and tendered his Proposed Third Amended Prisoner Complaint (Doc. No. 85-1 ["Proposed TAC"].)  The CHM Defendants filed a response on July 12, 2012 (Doc. No. 96 [CHM Resp. Mot. Am.]), the Sheriff Defendants file a response on July 27, 2012 (Doc. No. 99, ["Sheriff Defs. Resp. Mot. Am."], and Plaintiff filed a reply on August 10, 2012.  (Doc. No. 107. [Reply Mot. Amend].)

On August 6, 2012, Plaintiff filed an "Essential Motion" asserting he had not received several documents, including the CHM Defendants' response to his Motion to Amend.  (Doc. No. 104.)  The court thereafter directed the CHM Defendants' Response to Plaintiff's Motion to Amend to be sent to Plaintiff, and the certificate of service was returned on August 17, 2012. (Minute Order, Doc. No. 110; Doc. No. 112.)  Nevertheless, Plaintiff did not file a reply to his Motion to Amend, as it concerned the CHM Defendants.

On August 6, 2012, Plaintiff also filed his Motion to Strike, which seeks to strike the CHM Defendants' Motion to Dismiss, their Response to his Motion to Amend, and the Sheriff Defendants' Reply in support of their Motion to Dismiss, based on Plaintiff's contention he had not received these filings. (Mot. Strike at 1-2.) The CHM Defendants responded, and Plaintiff filed a reply. (Doc. Nos. 113, 115.) The Sheriff Defendants did not respond to the Motion to Strike, but Plaintiff nonetheless appears to have filed an almost identical reply to Doc. No. 113, apparently directed at the Sheriff Defendants. (*See* Doc. No. 118.)

The two motions to dismiss, the motion to amend the complaint, and the motion to strike are all, therefore, ripe for review.

## LEGAL STANDARDS

### A.    Pro Se *Plaintiff*

Plaintiff is proceeding *pro se.* The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haynes v. Kerner*, 404 U.S. 519, 520 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526  (1983);

7

*see also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (a court may not

"supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort*

*Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or

theories for the plaintiff in the absence of any discussion of those issues").

Plaintiff's Complaint does not designate the capacity in which each Defendant is being

sued.  Given this court's mandate to construe *pro se* pleadings less stringently than those drafted

by attorneys, *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007), the court

construes the SAC as asserting claims against all Defendants in their individual and official

capacities.  *See Pride v. Does*, 997 F.2d 712, 715 (10th Cir.1993) ("where the complaint fails to

specify the capacity in which the government official is sued, we look to the substance of the

pleadings and the course of the proceedings in order to determine whether the suit is for

individual or official liability"); *Fenner v. Suthers*, 194 F. Supp. 2d 1146, 1149 (D. Colo. 2002)

("plaintiff's complaint here seeks injunctive relief and is thus readily construed as a suit against

defendants in their official capacities").

**B.**       ***Failure to State a Claim Upon Which Relief Can Be Granted***

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss

a claim for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6)

(2007).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that

the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally

sufficient to state a claim for which relief may be granted."  *Dubbs v. Head Start, Inc.*, 336 F.3d

1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Bellmon*, 935 F.2d at 1198. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 678-80. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 679.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (citation omitted). "Where a

complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. (citation omitted).

## C.     *Leave to Amend*

Pursuant to Federal Rule of Civil Procedure 15(a), "The [C]ourt should freely give leave [to amend the pleadings] when justice so requires." *See also York v. Cherry Creek Sch. Dist. No. 5*, 232 F.R.D. 648, 649 (D. Colo. 2005); *Aspen Orthopaedics & Sports Medicine, LLC v. Aspen Valley Hosp. Dist.*, 353 F.3d 832, 842 (10th Cir. 2003).  The Supreme Court has explained the circumstances under which denial of leave to amend is appropriate.

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.-the leave sought should, as the rules require, be "freely given." Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

*Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Triplett v. LeFlore Cnty., Okl.*, 712 F.2d 444, 446 (10th Cir. 1983).  The Federal Rules reject the approach "that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits."  *Conley v. Gibson*, 355 U.S. 41, 48 (1957).

# ANALYSIS

### A.      *Plaintiff's Motion to Strike*

Plaintiff seeks to strike the CHM Defendants' Motion to Dismiss as untimely, as he received it after this court's imposed deadline to respond to the SAC.  (Mot. Strike at 1-2.) Further, Plaintiff seeks to strike the CHM Defendants' Response to his Motion to Amend and the Sheriff Defendants' Reply in support of their Motion to Dismiss on the basis that he claims to have not received those documents.  (*Id.*)

The CHM Defendants timely complied with the June 15, 2012 deadline to answer or otherwise respond to Plaintiff's SAC.  (*See* Minute Order, Doc. No. 66, dated May 15, 2012.) There was, apparently, a delay in the mailing of a copy of the response to Plaintiff of six days (*see* Doc. No. 113 at 2).  However, this caused Plaintiff no prejudice, as his Reply was filed without objection on July 11, 2012—twenty days after the mailing of the Response.  As to the two documents Plaintiff contends he did not receive, the court cured any potential prejudice with respect to the CHM Defendants' Response to Plaintiff's Motion to Amend by ordering a copy to be re-sent to Plaintiff.  (*See* Minute Order, Doc. No. 110, dated Aug. 14, 2012.)  Any prejudice to Plaintiff from not receiving the Sheriff Defendants' Reply in support of their Motion to Dismiss is minimal, given that the Local Rules do not permit surreplies.  *See* D.C.COLO.LCivR 7.1 C.  Accordingly, Plaintiff's Motion to Strike is denied.

### B.      *Defendants' Motions to Dismiss - Individual Capacity Claims*

The Sheriff Defendants and the CHM Defendants both argue Plaintiff fails to state a constitutional violation concerning any of the alleged conduct, and that each individual

defendant is also entitled to qualified immunity.  (*See* Sheriff Defs. Mot. at 5-23; CHM Defs.

Mot. at 4-10.)  The court considers those arguments with respect to Plaintiff's individual

capacity claims, while also considering the impact of Plaintiff's proposed TAC, if any.

### 1.    *Claim One*

Claim One explicitly asserts deliberate indifference to Plaintiff's medical needs in

violation of the Eighth Amendment (SAC at 8-16), but construed liberally, the claim contains

allegations of both failure to protect and deliberate indifference, each cognizable under the

Eighth Amendment.[2]  (*Compare id*. at 8-9, *with id*. at 10-16.)  The failure to protect claim arises

from Plaintiff's allegations that certain deputy sheriffs and staff at the detention facility did not

take steps to protect him from the March 5, 2010 incident after Plaintiff alerted them that he was

being threatened.  (*Id*. at 8-9.)  The deliberate indifference claim arises from Plaintiff's

allegations that staff failed to provide medical treatment following the March 5, 2010 incident.

(*Id*. at 10-16.)

### a.    *Failure to Protect*

To state a claim for deliberate indifference for failure to protect, an inmate must allege

that "first, '[h]e is incarcerated under conditions posing a substantial risk of serious harm,' and,

second, that officials had a 'sufficiently culpable state of mind.'"  *Gonzales v. Martinez*, 403

F.3d 1179, 1186 (10th Cir. 2005) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  The

---

[2]The Eighth Amendment applies to the states by incorporation through the Fourteenth
Amendment.  *See Mitchell v. Maynard*, 80 F.3d 1433, 1440 (10th Cir. 1996).  Plaintiff was in the
custody of Jefferson County in the State of Colorado at all relevant times.

mere fact that an assault occurred does not establish deliberate indifference to a plaintiff's constitutional rights. *See Hovater v. Robinson*, 1 F.3d 1063, 1068 (10th Cir. 1993). Similarly, "the failure to alleviate a significant risk that an official should have perceived but did not," does not amount to the infliction of cruel and unusual punishment in violation of the Eighth Amendment. *Farmer*, 511 U.S. at 838.

Plaintiff alleges he informed Defendant Renfro on February 2 and February 5, 2010, that "his well being was in jeopardy" from "deputy sheriffs benieth (sic) his supervision," and that he informed Defendant Aludo of the same between January 1 and February 2, 2010. (SAC at 8-9.) Plaintiff failed to identify any single specific harm or threat he faced or any particular individual who threatened him.[3] Plaintiff contends he should have received a courtesy transfer to another facility, something he claims is "done all the time." (Resp. Sheriff Defs. Mot. ¶ 5.)

Construed in Plaintiff's favor, the allegations suggest a failure on the part of Defendants Renfro and Aludo to perceive a risk to Plaintiff by virtue of Plaintiff's vague allegation that "his well being was in jeopardy." Such conduct, at best, amounts to nonactionable negligence. *See Daniels v. Williams*, 474 U.S. 327, 330-32 (1986) (allegations of mere negligence are not cognizable in any Section 1983 claim, regardless of the theory or clause of the Constitution used to justify the complaint); *Woodward v. City of Worland*, 977 F.2d 1392, 1399-1400 (10th Cir.

---

[3]As part of his Proposed TAC, Plaintiff attached a copy of a response to what appears to be a grievance request concerning threats by deputies. (Proposed TAC at 24.) The response indicates that the threat Plaintiff complained of was an unidentified deputy's touching of a Taser gun when Plaintiff refused orders. (*Id.*) It is not alleged that a Taser was used during the March 5, 2010 incident or that the same deputy was involved. Therefore, this defect is not cured by the Proposed TAC.

1992) (neither negligence or even gross negligence give rise to section 1983 liability).  Plaintiff's allegations that both Defendants by their inaction "contributed to and proximately caused deliberate indifference [because Plaintiff was] eventually assaulted by deputy sheriffs" (SAC at 8-9) are nothing more than "labels and conclusions" constituting a "formulaic recitation of the elements of a cause of action."  *Iqbal*, 556 U.S. at 678 (internal quotations marks and citation omitted).

Plaintiff's Proposed TAC deletes all allegations concerning the failure to protect in Claim One and begins the revised Claim One with a recitation of events on March 5, 2010.  (Proposed TAC at 9.)  The "protection" allegations, however, reappear in the Proposed TAC as a new Claim Six.  (Proposed TAC at 17.)  For the same reasons set forth herein regarding these allegations in the SAC, the amendment to add Claim Six to the Proposed TAC is futile as it does not cure the defects noted above.

### b.       *Deliberate Indifference to Serious Medical Need*

The Eighth Amendment's ban on cruel and unusual punishment is violated if a defendant's "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain."  *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."  *Estelle*, 429 U.S. at 103-04.

14

A claim for deliberate indifference has both an objective and a subjective component. To satisfy the objective component, a prisoner must demonstrate that his medical need is "objectively, sufficiently serious." *Farmer*, 511 U.S. at 834. A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (citation omitted). To satisfy the subjective component, a prisoner must demonstrate that prison officials acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. The official must "know[ ] of and disregard[ ] an excessive risk to inmate health and safety." *Id*. at 837. That is, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. Where the prisoner alleges only delay, rather than denial of treatment, he must assert that the delay caused him substantial harm. *Oxendine v. Kaplan*, 241 F.3d 1272, 1276-77 (10th Cir. 2001). "The substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005).

### 1.  *CHM Medical Defendants*

As noted in the SAC, shortly after the March 5, 2010 incident, Plaintiff was taken to the medical unit and treated by Defendant Nurse Katherine Becerra. Less than a week later, on March 11, 2010, Plaintiff was also seen again and treated by Defendant Nurse Tracy Haines. (SAC at 15.) Neither nurse made a determination that Plaintiff's injuries were sufficiently serious to warrant referral to a dentist for further care. (*Id*.) Plaintiff, of course, disagrees and

asserts he should have been referred to a dentist immediately.  Plaintiff alleges he requested

further care by sending a medical request form to CHM, which was reviewed by Defendants

Claudia Van Buren, a nurse, and Raymond Herr, a physician, who apparently concurred in the

medical assessment of Defendant Becerra, and who Plaintiff alleges did not order further

medical care.[4]  (*Id.* at 14.)

Plaintiff's allegations illustrate nothing more than his disagreement with the judgment of

medical professionals regarding his course of medical treatment, which the Tenth Circuit has

held does not state a constitutional violation.[5]  *See Perkins v. Kan. Dep't of Corrs.*, 165 F.3d 803,

811 (10th Cir. 1999);  A negligent failure to provide adequate medical care, even one

constituting medical malpractice, does not give rise to a constitutional violation.  *Estelle v.*

*Gamble*, 429 U.S. 97, 104-06 (1976); *Perkins,* 165 F.3d at 811; *see also Ledoux v. Davies*, 961

F.2d 1536, 1537 (10th Cir. 1992) ("Plaintiff's . . . contention that he was denied treatment by a

specialist is . . . insufficient to establish a constitutional violation.").  Therefore, Plaintiff has

failed to show a constitutional violation by Defendants Becerra, Van Buren, Herr or Haines in

their individual capacities.

In his Proposed TAC, Plaintiff seeks to add Nurse Katherine Olivas as a defendant,

asserting that while she was on routine medication rounds, she saw Plaintiff and, knowing that

---

[4] This statement is belied by the fact that Plaintiff did unquestionably receive further medical
care from Nurse Haines on March 11, 2010.  (SAC at 15.)

[5] Plaintiff's references Colo. Rev. Stat. § 12-35-102 (SAC at 13), which is merely a general
legislative declaration concerning dentistry and does not transform his disagreement into an
Eighth Amendment issue.

he had sustained injuries from the March 5, 2010 incident, did not take steps to insure that Plaintiff received further medical care.  (Proposed TAC at 3.)  For the same reasons applicable to Defendants Becerra, Van Buren, Herr and Haines, the attempt to add Katherine Olivas as a defendant would be futile as it fails to state a constitutional violation.

### 2.   *Sheriff Defendants*

Plaintiff alleges, that immediately after the incident with Defendant Viers, Plaintiff came in contact with Defendants Dye, Kotris, Springfield, Geleude, Richardson, Perry, Baughman, Longshore, Bohm, Wygant, and Lucas, as well as Defendant Viers, and each of these Defendants ignored Plaintiff's requests for medical attention.

First, Plaintiff must show by facts alleged in the complaint that as to each of these Defendants, his medical need was sufficiently obvious and serious that even a lay person would easily recognize the necessity for a doctor's attention." *Hunt,* 199 F.3d at 1224.  Plaintiff alleges as to each of these Defendants that after as a result of the incident he presented with cuts in his mouth and broken teeth.  It is not clear from the SAC that any of the Defendants had the ability to or did look inside Plaintiff's mouth, or that the broken teeth were immediately obvious. Therefore, this court does not believe that Plaintiff presented to these Defendants, who were obviously responding to the incident and escorting Plaintiff away from the scene, as having a sufficiently obvious and serious need for medical attention that would satisfy the first prong of a deliberate indifference claim.

That said, however, cuts and broken teeth are such that once discovered, should have alerted a lay person that Plaintiff had some need to be seen by medical providers although not

necessarily on an emergency basis.  Plaintiff's claim against these Sheriff Defendants, however, is <u>not</u> that Plaintiff was ignored; instead, he admits he was taken forthwith for medical treatment from Nurse Bacerra as noted *infra*.  Therefore, Plaintiff is wholly unable to meet the subjective component of a deliberate indifference claim – a sufficiently culpable state of mind wherein the individual knew of <u>and</u> disregard an excessive risk to Plaintiff's health.  Because Plaintiff has met neither the objective nor subjective components of a deliberate indifference claim under the Eighth Amendments as to Defendants Dye, Kotris, Springfield, Geleude, Richardson, Perry, Baughman, Longshore, Bohm, Wygant, Lucas and Viers in their individual capacities, they should be dismissed as to Claim One.

Plaintiff alleges that after he had been seen by medical personnel, who refused to order additional medical treatment or refer Plaintiff to a dentist, he made known to Defendants Mike Collins, Debra Aludo, Sgt. Renfro, Michael Fish, and Katherine Feroe that he believed he was not receiving adequate medical care and that these Defendants disregarded his condition.

Plaintiff alleges **no** facts against these non-medical Sheriff Defendants that it would have been obvious that Plaintiff was receiving inadequate medical treatment.  Plaintiff was taken to the medical unit and treated by medical professionals on two occasions.  The lay person defendants are entitled to rely on the judgment of medical staff regarding treatment.  *See Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir. 2008); *see also Meyer v. Singh*, No. 10-cv-02302-PAB-KMT, 2011 WL 2297735, at *13 (D. Colo. Apr. 27, 2011) ("Where it is evident to a lay person that a prisoner is receiving inadequate or inappropriate treatment, nonmedical prison officials still have an obligation to provide medical care."), *affirmed by Meyer v. Singh*, No. 10-cv-02302-

PAB-KMT, 2011 WL 2297718 (D. Colo. June 9, 2011).  A prisoner's difference of opinion with

medical staff regarding his treatment does not rise to the level of a constitutional violation.

*Johnson v. Stephan*, 6 F.3d 691, 692 (10th Cir. 1993); *see also Estelle*, 429 U.S. at 106 ("In order

to state a cognizable claim a prisoner must allege acts or omissions sufficiently harmful to

evidence deliberate indifference to a serious medical need.")  This court agrees with the Third

Circuit which held that

> [i]f a prisoner is under the care of medical experts . . . a non-medical prison
> official will generally be justified in believing that the prisoner is in capable
> hands. This follows naturally from the division of labor within a prison. Inmate
> health and safety is promoted by dividing responsibility for various aspects of
> inmate life among guards, administrators, physicians, and so on. Holding a
> non-medical prison official liable in a case where a prisoner was under a
> physician's care would strain this division of labor.

*Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004).

Plaintiff has failed to show a constitutional violation by Defendants Mike Collins, Debra

Aludo, Sgt. Renfro, Michael Fish, and Katherine Feroe in their individual capacities in Claim

One and presents no additional facts in the Proposed TAC which would cure this defect.

### 2.    *Claim Two*

Claim Two is brought against Sheriff Defendant Crumbaker, who allegly made threats

against Plaintiff when he attempted to report that his mail was being deliberately delayed;

Defendants Happ and Renfro, as a result of their supervisory positions over employees alleged to

have been delaying the mail; Defendant Holley, who allegedly "tampered" in an unspecified

manner with documents Plaintiff intended to use in his case; and Defendant Betka, who allegedly

became aware of Defendant Holley's activity and took no action to stop it.  Plaintiff also alleges

19

Defendant Gittins did not allow Plaintiff to make photocopies of materials he wished to use as exhibits for his cases and a vague allegation concerning Defendant Gittins supervisory role over Defendants Renfro and Betka.  (SAC at 17.)  Plaintiff presents this claim as a violation of due process and equal protection,[6] (*see id*.; Pl.Resp.Sherrif, ¶ 11), however the court views this claim as one involving access to the courts arising out of the First Amendment.

As with all individual capacity suits pursuant to § 1983 which seek to impose personal liability upon a government official for actions he or she takes under color of state law, personal participation is an essential allegation.  *Bennett v. Passic*, 545 F.2d 1260, 1262–1263 (10th Cir. 1976); *Kentucky v. Graham*, 473 U.S. 159, 165–67 (1985).   To establish personal liability, a plaintiff must show that the official caused the deprivation of a federal right.  *Graham*, 473 U.S. at 166.  A defendant may not be held liable merely because of his or her supervisory position.  *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996).  There must be an affirmative link between the alleged constitutional violation and each defendant's participation, control or direction, or failure to supervise.  *See Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993).  A plaintiff must both allege in the complaint and prove at trial an affirmative link between the alleged constitutional violation and a defendant's participation.  *See Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1157 (10th Cir. 2001) (for § 1983 claim,

---

[6]An equal protection claim requires a plaintiff to plead sufficient facts to "demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination."  *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002).  There are no allegations in Claim Two to bring it within the purview of a Fourteenth Amendment equal protection claim.

affirmative link between the defendant's conduct and any constitutional violation "must be alleged in the complaint as well as proven at trial").

As to Defendants Happ, Renfro, Betka and Gittins (on the supervisory allegations), Plaintiff has set forth no facts whatsoever indicating any action or activity engaged in by the individual defendants.  Therefore, due to lack of personal participation, Claim Two must be dismissed as to Defendants Happ, Renfro and Betka in their individual capacities.

An allegation of denial of access to the courts is viewed as an aspect of the freedom of petition clause of the First Amendment, *Harrison v. Springdale Water and Sewer Comm'n*, 780 F.2d 1422, 1427 n.7 (8th Cir. 1986), as guaranteed by the Due Process Clause of the Fourteenth Amendment.  *See Bounds v. Smith*, 430 U.S. 817, 822 (1977) (Due Process Clause of the Fourteenth Amendment guarantees non-federal inmates the right to "adequate, effective, and meaningful" access to the courts); s*ee also Green v. Johnson*, 977 F.2d 1383, 1389 (10th Cir. 1992) ("The constitutional right of access to the courts is guaranteed by the Due Process Clauses of the Fifth and Fourteenth Amendments.").  To state a claim for denial of access to the courts, an inmate must allege facts that demonstrate a prejudice to him in pursuing specific litigation. *Treff v. Galetka*, 74 F.3d 191, 194 (10th Cir. 1996).

While Plaintiff alleges that legal mail he attempted to send from the Jefferson County Detention Facility was "getting delayed," he does not identify who in particular amongst "personnel at the Jefferson County Sheriff Office" was responsible for this, what any particular individual did to cause such delay, what sort of delay occurred, what kind of mail was delayed and whether the delay affected a specific case—including the name or other identifying

21

information about the case and how the delay affected the proceedings.  (SAC at 17.)  Plaintiff's

conclusory allegations that such delay "effected (sic) the outcome of the cases" (*id*.) is

insufficient under the *Iqbal* standard.  556 U.S. at 678.  Plaintiff fails to identify a proceeding,

claim or argument that he was hampered in pursuing or participating.  Similarly, Plaintiff's

allegation of "tampering" with what he refers to as "intrinsic evidence" (SAC at 17), fails to

identify a particular document interfered with, how such a document was interfered with, or the

effect of such interference was.  These allegation also fail under *Iqbal*.

Plaintiff's alleged denial of the opportunity to make photocopies asserted against

Defendant Gittins is also insufficient as a matter of law because "[a] prisoner's right of access to

the court does not include the right of free unlimited access to a photocopying machine,

particularly when . . . there are suitable alternatives."  *Harrell v. Keohane*, 621 F.2d 1059, 1061

(10th Cir. 1980).  The Tenth Circuit has indeed found that handwriting copies of court

documents is a reasonable alternative to photocopying court documents when a court does not

require typed documents.  *See Holt v. Werholtz*, 185 F. App'x 737, 740 (10th Cir. 2006).

In Plaintiff's Proposed TAC, he asserts a new Claim Four against Defendants Renfro,

Betka and Gittin also based on allegations that these Defendants did not allow him to make

specific photocopies.  For the same reasons discussed immediately above, this Claim would be

futile if allowed because it does not state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

Plaintiff does not appear to allege that he was prevented from using the law library;

however, there is some suggestion of law library restriction in the first paragraph of Claim Two,

where Plaintiff set out the allegations he was attempting to make use of the law library when

Defendant Crumbaker allegedly threatened him.  To the extent there is such an allegation buried

in the SAC, an allegation of restricted access to the law library is insufficient because inmates

need not be afforded unlimited access to a law library, and "restricted access to the law library is

not *per se* denial of access to the courts."  *Twyman v. Crisp*, 584 F.2d 352, 358 (10th Cir. 1978).

Finally, stripping the allegations in Claim Two of the conclusory statements, the

allegation against Defendant Crumbaker is that Crumbaker "threatened" him "with physical

harm" for attempting to file "kites" about problems with access to legal mail and the law library.

There are no facts alleging what, if anything, was said to Plaintiff.  Plaintiff does not indicate

when or how this threat was made.  Plaintiff has not alleged any specific physical injury actually

sustained as a result of these unspecified threats or attempts.  *Mimms v. U.N.I.C.O.R..*, 386 Fed.

Appx. 32, 35 (3rd Cir. 2010) (holding that plaintiff's "failure to protect" claim was properly

dismissed where the plaintiff offered only conclusory allegations that did not present a situation

where the plaintiff's health or life were at risk).  Plaintiff has not set forth any facts showing

what, if any, affect the threat had on his right of access to court, particularly with respect to any

specific case or court matter.

Plaintiff's Proposed TAC does not cure this deficit.  The amendments to the allegations

that have already appeared in Claim Two do no more than (1) specify a discovery document

Plaintiff tried to view in the law library, and (2) add a conclusory statement that he was "treated

with prejudice than other individuals proceeding prose [sic] on other criminal or civil matters."

(Proposed TAC at 17-18.)

Additionally, the Proposed TAC alleges a new Claim Five against Defendants Crumbaker and Holley for retaliation, claiming in only the most conclusory terms that these Defendants ""being prejudiced towards Plaintiff, abridged Plaintiffs attempts to proceed Prose [sic] . . . ." (Proposed TAC at 21.) Plaintiff also asserts the same claim against previously dismissed Jefferson County Attorney Writer Mott and Attorney Laura Wassmuth. For the same reasons as in the SAC, the Proposed TAC is completely devoid of factual allegations supporting a claim of retaliation against any of these Defendants and therefore fails to state a claim. *Iqbal*, 556 U.S. at 678.

Therefore, allowing the Proposed TAC amending Claim Two and including the new Claims Four and Five would be futile.

### 3. *Claim Three*

Claim Three is entitled "Constitutional Torts" does not contain a single reference to any provision of the United States Constitution. Rather Claim Three refers to a panoply of Colorado criminal statutes contained in Title 18, the Criminal Code of the Colorado Revised Statutes. (SAC at 18.) The Plaintiff purports to raise claims against Defendant Ryan Viers under several criminal statutes, none of which provide for a private cause of action. (*Id.*) *See* Colo. Rev. Stat. §§ 18-3-202 ("Assault in the first degree . . . is a class 5 felony."); 18-9-111 ("Harassment . . . is a class 3 . . . [or] class 1 misdemeanor."); 18-8-802 ("Any peace officer who fails to report such use of force . . . commits a class 1 misdemeanor."); 18-803 ("a peace officer who uses excessive force in pursuance of such officer's law enforcement duties shall be subject to the criminal laws of this state"); 18-8-706 ("Retaliation against a witness or victim is a class 3 felony."); 18-8-404

("First degree official misconduct is a class 2 misdemeanor."); 18-9-121 ("Commission of a

bias-motivated crime . . . is a class 1 misdemeanor . . . [or] a class 5 felony . . . [or] a class 4

felony."); 18-8-610 ("Tampering with physical evidence is a class 6 felony.")

Plaintiff cannot personally bring criminal charges against Defendant Viers, nor are such

criminal charges properly brought under Section 1983. *Andrews v. Heaton*, 483 F.3d 1070, 1076

(10th Cir.2007) (criminal statutes that do not provide for a private right of action are not

enforceable through a civil action); *Wolf v. Petrock*, 382 Fed.Appx. 674, 677,(10th Cir. 2010).

See also *Orcutt v. Libel*, 381 Fed.Appx. 866, 868 (10th Cir. 2010) (district court dismissed two

claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), on the ground

that private citizens cannot prosecute criminal actions unless a private right of action is expressly

provided.); *Clements v. Chapman*, 189 Fed.Appx. 688, 692 (10th Cir.2006) (citing *Diamond v.*

*Charles*, 476 U.S. 54, 64–65 (1986)) (noting that private citizens cannot compel enforcement of

criminal law)( "[N]one of the federal criminal statutes cited ... provide for a private cause of

action."); *Henry v. Albuquerque Police Department*, 49 Fed.Appx. 272, 273 (10th Cir.2002)

(citing *Newcomb v. Ingle*, 827 F.2d 675, 677 n. 1 (10th Cir.1987); *Cok v. Cosentino*, 876 F.2d 1,

2 (1st Cir.1989)) (noting that § 241 and § 242 of Title 18 are criminal statutes and do not

authorize a private right of action).

Therefore, Plaintiff's claim against Defendant Ryan Viers in his individual capacity must

be dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).[7]

---

[7] The court, while not discounting the argument made by Defendants concerning *Heck v.*
*Humphrey*, 512 U.S. 477 (1994), declines to address the issue at this stage because to do so

In Claim Three, Plaintiff also alleges that Defendant Erik Baughman witnessed the incident on March 5, 2010 and did not report the alleged criminal activity of Defendant Viers. To the extent Plaintiff makes claims of criminal activity against Defendant Baughman for violations of Colo. Rev. Stat. § 18-8-405(1)(a), directed at a government official who "[r]efrains from performing a duty imposed upon him by law," this class one petty offense provides for no private right of action and civil claims based upon it are therefore barred for the reasons set forth above.

Construing Plaintiff's claims to be one of failure to report excessive force, Defendant Baughman had no independent constitutional duty to report such force. *See Franklin v. City of Kansas City*, 959 F. Supp. 1380, 1384 (D. Kan. 1997) (finding no authority to support proposition that an officer is required to report a fellow officer's alleged use of excessive force such as would amount to clearly established law for section 1983 purposes). *See also Woodland v. City of Vicksburg*, No. 5:05cv85DCBJCS, 2006 WL 3375256, at *2 (S.D. Miss. Nov. 21, 2006) ("As a general rule, the failure of a police officer to report another officer's use of excessive force does not rise to the level of an actionable constitutional wrong."); *Payton v. DuBroc*, No. 1:05CV2092, 2006 WL 2925387, at *3 (W.D. La. Sept. 6, 2006) ("The only claim made against Defendant Milligan is that he failed to report the allegedly excessive force by his

---

might convert the Motion to Dismiss into one for summary judgment—notwithstanding the Sheriff Defendants' argument to the contrary—and more importantly it is unnecessary at this juncture. However, to the extent Plaintiff might attempt to amend his complaint to cure the defect caused by invoking criminal statutes, the *Heck* doctrine would very likely be applicable and would render such an amendment futile.

coworker, DuBroc.  Such a claim does not fall under the Eight Amendment and should be dismissed as frivolous.").

Accordingly, Plaintiff has also failed to state a claims against Defendant Baughman in his individual capacity pursuant to Fed. R. Civ. P. 12(b)(6).

Plaintiff's Proposed TAC adds only the additional fact that, prior to the incident on March 5, 2010, Defendant Viers ordered Plaintiff to go to "lockdown," which Plaintiff apparently refused to do because "Defendant Viers did not tell other inmates to lockdown." (Proposed TAC at 19.)  While the court notes that the specific factual addition likely strengthens, not weakens the Defendants' position, it does nothing to rectify the noted deficiencies of the Plaintiff's claim.  Therefore, allowing the Proposed TAC would be futile.

### 4.     *Sheriff Ted Minks*

In Claims One and Three, Plaintiff asserts that Defendant Sheriff Mink was deliberately indifferent to his health and safety by failing to train and supervise his deputies "to not violate laws and United States Constitutional rights of Inmates . . . ."  (SAC at 16.)  These allegations against Defendant Minks involve no personal participation.

"In order to show a supervisor's failure to adequately train law enforcement officers amounted to a constitutional violation, the superior must have participated or acquiesced in the claimed constitutional deprivations" to be held liable in his individual capacity.  *Stuart v. Jackson*, 24 F. App'x. 943, 955 (10th Cir. 2001) (citing *Meade v. Grubbs*, 841 F.2d 1512, 1527-28 (10th Cir. 1988)).  Plaintiff does not allege that Defendant Minks participated in or

acquiesced in any specific conduct.  As such, Plaintiff fails to state a claim for relief against Defendant Minks in his individual capacity.

### 5.     *Qualified Immunity*

The doctrine of qualified immunity shields government officials from individual liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial."  *Saucier v. Katz*, 533 U.S. 194, 121 (2001).

Because of the underlying purposes of qualified immunity, courts address qualified immunity questions differently from other summary judgment decisions.  *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001).  After a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff, who must meet a "heavy two-part burden."  *Id.*  Plaintiff first must establish that the facts, taken in the light most favorable to Plaintiff, show that the officer's conduct violated a constitutional right.  *Saucier*, 533 U.S. at 201.  If Plaintiff establishes a violation of a constitutional or statutory right, "the next, sequential step is to ask whether the right was clearly established."  *Id.*  This determination must be made "in light of the specific context of the case, not as a broad general proposition."  *Id.*  "[T]he relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Id.* at 202.  If the plaintiff fails to satisfy either part of this "heavy

two-part burden," the court must grant the defendant qualified immunity and dismiss the deficient claims.

The United States Supreme Court has altered somewhat the analytical process outlined in *Saucier*, holding that the sequence of the analysis is no longer mandatory. *Pearson v. Callahan*, 555 U.S. 223 (2009). The judges of the district courts and the courts of appeals are now permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand. *Id.* at 236. The Supreme Court noted, however, that the sequence set forth in *Saucier* often is the appropriate analytical sequence. *Id.*

As noted, Plaintiff has failed to establish that any of the Defendants in their individual capacities have committed a constitutional violation. Therefore, having failed to establish that the Defendants violated a constitutional or statutory right, the individual defendants are entitled to Qualified Immunity on all claims.

C.     ***Defendants' Motions to Dismiss - Official Capacity Claims***

    1.     ***Defendants other CHM***

Construing the SAC to bring official capacity claims against each of the Sheriff and CHM Defendants, Plaintiff effectively asserts claims against the government entity that employs them, to wit: Jefferson County, through the Jefferson County Sheriff's Office, which is not a named defendant, and CHM, who is a named defendant. *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1009 (10th Cir.1998). See also *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (A suit against an individual officer of a government agency in his or her official capacity is really "only

29

another way of pleading an action against an entity of which an officer is an agent."); *Monell v. New York City Police Dept. of Social Services*, 436 U.S. 658, 690, n. 55 (1978).

Neither a municipality nor an entity such as CHM, which is the functional equivalent of a municipality (see Section (C)(2) *infra*), can be liable under § 1983 without a predicate constitutional harm inflicted by its officer. *Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir.2004) (*citing City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)); *see also Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1317–18 (10th Cir.2002) ("We will not hold a municipality liable [for constitutional violations] when there was no underlying constitutional violation by any of its officers").

As discussed above, Plaintiff has failed to sufficiently allege that any of the Sheriff Defendants or the CHM Defendants in their individual capacities violated his constitutional rights.  Accordingly, there is no predicate constitutional harm to hold Jefferson County or CHM liable under § 1983. Therefore, the court finds that Plaintiff's § 1983 claims against the Jefferson County Defendants and the CHM Defendants in their official capacities are properly dismissed.

## 2.     *Defendant CHM*

A private entity that contracts to perform a traditional government function such as providing medical services to prison inmates may be sued under § 1983 as one acting under color of state law.  *See Peoples v. CCA Det. Ctrs.*, 422 F.3d 1090, 1111, nn. 8, 11 (10th Cir. 2005) (assuming that employees of a private prison act under color of state law for purposes of § 1983 suits by inmates . . ."); *Marsh v. Newton*, 134 F.3d 383, 1998 WL 39235, n. 4 (10th Cir. Jan. 30, 1998) (unpublished) ("We assume, for purposes of this

analysis, that Corrections Corporation of America, the private company operating the women's prison, and its employees, are state actors."); *Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997) (When a private entity contracts with a county to provide medical services to inmates, it performs a function traditionally within the exclusive prerogative of the state and in so doing, it becomes the functional equivalent of the municipality.); *Street v. CCA*, 102 F.3d 810, 814 (6th Cir. 1996) (employees of private prison management company were acting under color of state law for § 1983 purposes in that they were performing a "traditional state function."). *See also Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003) (recognizing the expansion of municipal liability to private entities).

"Like a county or a municipality, however, a private corporation like CHM cannot be held liable on the basis of the doctrine of *respondeat superior*." *Monell*, 436 U.S. at 691; *Nelson v. Prison Health Services, Inc.*, 991 F. Supp. 1452, 1465 (M.D. Fla. 1997); *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982) (vicarious liability does not apply in § 1983 claims, even where the defendant is a private corporation, rather than a municipality or other public agency). Thus, the test for CHM's "liability under § 1983 mirrors that of the test for [a municipality.]" *Fresquez v. Baldwin,* Case No. 08-cv-01233-CMA-CBS, 2009 WL 2514424, at *4 (D. Colo. Feb. 17, 2009). Plaintiff must prove "either that the company was directly involved in the alleged violation or that a policy or custom of the corporation led to the violation." *Id. See also Buckner*, 116 F.3d 450, 452 ("the *Monell* policy or custom requirement applies in suits against private entities performing functions traditionally within the exclusive prerogative of the state, such as the provision of medical care to inmates."); *Thomas v. Zinkel*, 155 F. Supp. 2d 408,

412 (E.D. Pa. 2001) (liability of private corporation may not rest on *respondeat superior*, but rather must be based on a policy, practice, or custom that caused the injury); *Taylor v. Plousis*, 101 F. Supp. 2d 255, 263 (D.N.J. 2000) (private corporation performing a municipal function is subject to the holding in *Monell*).

Regarding the policy and custom type of violation, Plaintiff must allege the same elements relevant to municipal liability, that is "(1) the existence of a [] custom or policy and (2) a direct and causal link between the custom or policy and the violation alleged." *Jenkins v. Wood*, 81 F.3d 988, 993 (10th Cir. 1996) (citing *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)). In Claim One, Plaintiff alleges that because he submitted a medical request form on March 7, 2010, but was not seen by a second medical provider for several days, CHM, as an entity, was indifferent to his medical needs by failing to train and supervise its staff. (SAC at 14.) Plaintiff states that CHM's failure to institute a policy "to delegate a medical function for certain type's of injuries[8]" has caused plaintiff to stay without treatment for injuries sustained on March 5th 2010." (SAC at 14.) Aside from this unintelligible assertion of an appropriate policy, Plaintiff has wholly failed to identify any policy or custom of CHM that was the moving force behind the alleged actions, or inactions, taken by its staff.

In his Proposed TAC, the Plaintiffs adds only conclusory language about what, in his opinion, should or should not be "standard policy," which will not save this claim pursuant to an

---

[8] Plaintiff relies on "General Assembly/Colorado Revised Statues [sic]" for this proposition without any specific citation. Even if he had referenced an appropriate rule or statute, however, the failure to adhere to internal policies or administrative regulations does not amount to a constitutional violation. *See Hovater*, 1 F.3d at 1068 n.4.

*Iqbal* analysis.  None of the proposed language saves the claim against CHM and therefore allowing the Proposed TAC to go forward would be futile with respect to this Defendants.

Further, Plaintiff's Claim One against CHM rests solely on what he contends is inadequate conduct on the part of Defendants Van Buren and Herr, CHM's staff, when they reviewed the grievance filed by Plaintiff and allegedly did not refer Plaintiff for further treatment.  As noted herein, even if taken as true, the alleged actions of these two defendants in their individual capacities did not violate Plaintiff's constitutional rights.  *See Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1317-18 (10th Cir. 2002) ("We will not hold a municipality 'liable [for constitutional violations] when there was no underlying constitutional violation by any of its officers.'").

Therefore, for the foregoing reasons, Plaintiff's claims against CHM fail to state a claim for relief, and the allegations contained in his proposed TAC as to CHM are futile.

**WHEREFORE**, for the foregoing reasons,

It is **ORDERED**

"Plaintiff's Motion to Strike [doc #80], [doc #96] and Jefferson County Sheriff Defendants (sic) [Reply in Support of their Motion to Dismiss], as Untimely" (Doc. No. 105) is **DENIED**.

This court further respectfully **RECOMMENDS**

"Jefferson County Sheriff Defendants' Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6)" (Doc. No. 54) be **GRANTED**;

"CHM Defendants' Combined Motion and Brief to Dismiss Second Amended Prisoner's Complaint" (Doc. No. 80) be **GRANTED**; and

Plaintiff's "Motion for Leave to Amend – Second Amended Prisoners (sic) Complaint" (Doc. No 85) be **DENIED**.

This court further **RECOMMENDS** that the District Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this recommendation and order would not be taken in good faith and therefore *in forma pauperis* status will be denied for the purpose of appeal. *See Coppedge v. United States*, 369 U.S. 438 (1962). Thereafter, if Plaintiff files a notice of appeal he also must pay the full $455.00 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days of the court's final order in accordance with Fed. R. App. P. 24.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to

34

make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc*., 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 6th day of February, 2013.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge